# NO. 17-1219

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

**JEFFREY SYDNEY and STEPHEN CAPOUSIS, on behalf of themselves and others similarly situated,**

*Plaintiffs-Appellants*

v.

**TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP,**

*Defendant-Appellee*

**TIME WARNER CABLE INC.,**

*Defendant*

On Appeal from an Order of the United States District Court
for the Northern District of New York
Case No. 11-cv-01057-GPC-RBB

## APPELLEE'S ANSWERING BRIEF

**KABAT CHAPMAN & OZMER LLP**
**J. Scott Carr**
**171 17th Street, N.W., Suite 1550**
**Atlanta, Georgia 30363**
**Telephone: (404) 400-7301**
**Attorneys for Defendant-Appellee**
**Time Warner Entertainment-Advance/Newhouse Partnership**

## CORPORATE DISCLOSURE STATEMENT

Time Warner Entertainment-Advance/Newhouse Partnership's has been dissolved. Charter Communications, LLC is now the employer of employees in the group where Plaintiffs worked. Charter Communications, LLC's ultimate parent company is Charter Communications, Inc. Charter Communications, Inc. is a publicly held corporation. Liberty Broadband Corporation, a publicly held corporation, owns 10% or more of Charter Communications, Inc.'s stock.

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ....................................... i

I.    JURISDICTIONAL STATEMENT ................................................1

II.   STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................1

III.  STATEMENT OF THE CASE .......................................................1

IV.  SUMMARY OF ARGUMENT ......................................................2

V.   STATEMENT OF THE FACTS ....................................................5

     A.   Undisputed Facts Establish that Plaintiffs' Primary Duty Was
         Sales.......................................................................................5

          1.   Plaintiffs Were Chosen for the TSR Position Because of
              Their Sales Experience ..............................................5

          2.   Plaintiffs Obtained Orders Based On Their Sales Efforts ..........6

          3.   Plaintiffs Received Ongoing Sales Training............................7

          4.   Plaintiffs' Performance Requirements Were Sales-Based ........8

          5.   Plaintiffs' Compensation Was Based Primarily on Sales...........9

          6.   All of Plaintiffs' Duties Were Intended to Increase Their
              Sales ...................................................................9

     B.   Plaintiffs Admit They Spent the Majority of Their Time in the
         Field ..................................................................................10

VI.  STANDARD OF REVIEW........................................................11

VII.  ARGUMENT........................................................................12

     A.   Undisputed Facts Compelled the Conclusion That Plaintiffs'
         Primary Duty Was Sales ....................................................13

          1.   Plaintiffs Concede Facts Proving Sales Was Their Primary
              Duty.....................................................................13

2.      Plaintiffs' Unpaid Commissions Claim and Arguments in the District Court Constitute an Admission that Sales Was Their Primary Duty ................................................................20

B.      Plaintiffs Were Customarily and Regularly Engaged Away From TWEAN's Place of Business in Performing Their Primary Duty ......20

C.      Plaintiffs Satisfy All the Hallmark Indicia of Outside Salespersons ........................................................................22

     1.      Plaintiffs Generated Commissions for Themselves on Their Sales ..............................................................22

     2.      Plaintiffs Were Subject to Little or No Supervision ................23

     3.      Plaintiffs Performed Substantial Work Away From TWEAN's Place of Business ..................................24

     4.      Plaintiffs Independently Solicited New Business ....................24

     5.      Plaintiffs' Work Was Unsuitable for an Hourly Wage.............25

VIII.      CONCLUSION.................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chenensky v. N.Y. Life Ins. Co.*,
 No. 07 Civ. 11504(WHP), 2009 WL 4975237
 (S.D.N.Y. 2009) ................................................................. 12, 21, 22, 23, 24, 25

*Christopher v. Smithkline Beecham Corp.*,
 132 S. Ct. 2156 (2012) ........................................................... 17, 18, 25

*Dixon v. Prospect Mortg., LLC*,
 11 F. Supp. 3d 605, 610-11 (E.D. Va. 2014) ......................... 18, 21, 25

*Fields v. AOL Time Warner, Inc.*,
 261 F. Supp. 2d 971 (W.D. Tenn. 2003) .......................... 18, 22, 23, 24

*Gold v. New York Life Ins.*,
 09 Civ. 3210(WHP), 2011 WL 2421281 (S.D.N.Y. May 19, 2011) ................. 22

*Gold v. New York Life Ins. Co.*,
 730 F. 3d 137 (2d Cir. 2013) ................................................... 17, 21

*Harlen Assoc. v. Incorp. Vill. of Mineola*,
 273 F.3d 494 (2d Cir. 2001) ............................................................... 11

*Hill v. Delaware North Companies Sportservice, Inc.*,
 838 F.3d 281 (2d Cir. 2016) ............................................................... 11

*Hodgson v. Krispy Kreme Doughnut Co.*,
 346 F. Supp. 1102 (M.D.N.C. 1972) ............................................. 18, 19

*Lint v. Northwestern Mut. Life Ins. Co.*,
 No. 09CV1373, 2010 WL 4809604 (S.D. Cal. Nov. 19, 2010) ........................ 21

*Nielsen v. DeVry, Inc.*,
 302 F. Supp. 2d 747 (W.D. Mich. 2009) .............................. 18, 23, 26

*Pippins v. KPMG, LLP*,
 759 F.3d 235 (2d Cir. 2014) .............................................................. 11

iv

*Ramos v. Baldor Specialty Foods, Inc.*,
   687 F.3d 554 (2012).................................................................................12

*Stephenson v. Dow Chemical Co.*,
   346 F.3d 19 (2d Cir. 2003) .......................................................................1

*Taylor v. Waddell & Reed, Inc.*,
   No. 09cv2909, 2012 WL 10669 (S.D. Cal. Jan. 3, 2012)...........................21, 25

*XL Specialty Ins. Co. v. Otto Naumann, Ltd.*,
   No. 12–CV–8224, 2015 WL 1499208 (S.D.N.Y. Mar.31, 2015) .....................21

**Statutes**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 1367 ........................................................................................1

29 U.S.C. 201 *et seq.* sections 7 and 13................................................12

29 U.S.C. § 207(i) ......................................................................................1

29 U.S.C. § 213(a)(1).................................................................................12

N.Y. Lab. Law § 190(6).........................................................................4, 21

N.Y. Lab. Law § 191(1)(c) .....................................................................3, 21

**Other Authorities**

29 C.F.R. § 541.500 ..................................................................................12

29 C.F.R. § 541.500(b) .............................................................................19

29 C.F.R. § 541.700(a).........................................................................13, 22

12 NYCRR § 142-2.2 (2014)...................................................................12

Fed. R. App. P. 32(a)(7)(B) .....................................................................27

Fed. R. App. P. 32(a)(7)(C) .....................................................................27

## I.  JURISDICTIONAL STATEMENT

Time Warner Entertainment Advance Newhouse Partnership ("TWEAN") agrees the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  TWEAN further agrees this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## II.  STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the district court properly held that Plaintiffs were exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") pursuant to the outside sales exemption where undisputed facts showed that Plaintiffs' primary duty was taking orders for TWEAN's services, and that they were customarily and regularly engaged away from TWEAN's offices in activities they admit were intended to result in sales and commissions.[1]

## III.  STATEMENT OF THE CASE

TWEAN agrees with Plaintiffs' Statement of the Case.

---

[1] The District Court did not address TWEAN's alternative argument that Plaintiffs were also exempt from overtime under the FLSA and the NYLL pursuant to the FLSA's retail sales exemption, 29 U.S.C. § 207(i).  Accordingly, in the unlikely event this Court concludes that Plaintiffs may not qualify for the outside salesperson exemption, it should remand this matter to the District Court for further consideration of the retail sales exemption.  *Stephenson v. Dow Chemical Co.*, 346 F.3d 19, 20 (2d Cir. 2003) (remanding matter for initial determination of alternative grounds after rejecting ground upon which lower court's ruling rested).

1

## IV.    SUMMARY OF ARGUMENT

The Court should affirm the grant of summary judgment in favor of TWEAN because, *as Plaintiffs admit*, the District Court's holding that Plaintiffs fell within the outside sales exemption to the overtime requirements of the FLSA and NYLL was based on undisputed facts,[2] and well-settled law.

Indeed, Plaintiffs do not assert that the District Court engaged in any fact-finding or relied upon disputed facts in holding that Plaintiffs were exempt outside salespersons.  Rather, they concede that the District Court's finding that Plaintiffs' primary duty was sales was based on numerous undisputed facts, including but not limited to the following:

- Plaintiffs' job title was "Territory *Sales* Representative" ("TSR");

- The TSR position was part of TWEAN's Direct *Sales* Department;

- Plaintiffs were selected for the TSR position after excelling as Direct *Sales* Representatives;

- Plaintiffs received both formal and informal *sales* training;

- Plaintiffs had *sales* quotas they were expected to meet;

- Plaintiffs attended weekly *sales* meetings;

- Plaintiffs' performance was measured by achievement of their *sales* quota;

---

[2] Appellants' Brief (D.E. 42) at 24.  All pinpoint citations to Appellant's Brief are to the ECF page numbers at the top of the page.

- Plaintiffs were ranked against other TSRs based on their *sales*;

- The majority of Plaintiffs' compensation was in the form of *sales* commissions;

- Plaintiffs formed relationships with the staff and managers of apartment complexes for the purpose of obtaining referrals for *sales*;

- Plaintiffs held events at properties to promote *sales* of TWEAN's services;

- Plaintiffs were coached by their supervisors to "knock on more doors" so they could make more *sales*;

- To promote *sales*, Plaintiffs were authorized to waive installation fees if the customer either installed the services using a self-installation kit, or allowed Plaintiffs to install the services;

- Plaintiffs' installation activities were the final step in consummating a *sale*, as they received commissions only on *sales* that were ultimately installed; and

- Plaintiffs did not install services sold by others, but instead installed only services they sold themselves.

Based on these (and other) *undisputed* facts as to how Plaintiffs spent their time, it was obvious to the District Court – as it should be to this Court – that Plaintiffs' most important (and thus primary) duty was sales. Indeed, Plaintiffs cannot in good faith argue otherwise, as they asserted and vigorously pursued a commission claim pursuant to N.Y. Lab. Law § 191(1)(c), which only applies to "employee[s] whose

*principle activity is the selling of any goods . . . [or] services.*"  N.Y. Lab. Law § 190(6).  Given that the undisputed facts demonstrated that Plaintiffs' primary duty was sales, and Plaintiffs admitted they spent the majority of their time in the field engaged in activities they admit were intended to increase Plaintiffs' sales, the District Court properly held that Plaintiffs fell within the outside sales exemption as a matter of law.

Plaintiffs ignore these undisputed facts on which the District Court based its order.  Similarly, Plaintiffs completely fail to address the well-settled law the District Court relied upon in holding that the exemption applies.  In fact, ***Appellants' Brief is devoid of even a single case regarding the outside sales exemption, much less any authority suggesting that the District Court misapplied the law***. Instead of addressing the dispositive facts and law, Plaintiffs argue only that the District Court failed to consider other facts purportedly showing that Plaintiffs' primary duty was installing cable products and maintaining relationships with apartment complex personnel.  Contrary to Plaintiffs' assertion, the record shows the District Court considered those activities, but properly found they were part and parcel of Plaintiffs' sales efforts.  Indeed, Plaintiffs admitted that the purpose of creating and maintaining relationships with apartment complex personnel was to obtain sales referrals, and further admitted that installing the services they sold helped them close

4

sales. Accordingly, the District Court was correct to grant summary judgment in favor of TWEAN, and that Order should be affirmed.

## V.     STATEMENT OF THE FACTS

### A.     Undisputed Facts Establish that Plaintiffs' Primary Duty Was Sales

Plaintiffs were TSRs in the Direct Sales Department for TWEAN. (A893-A894 at ¶¶ 18-19.) TSRs are sales representatives who solicit orders and sales from tenants in apartment complexes and other multiple dwelling units. (A891-A892 at ¶¶ 11-12; A307; A423; A507; A538; A543.) The purpose of the TSR position is to "build relationships with property staff [and] represent the company to potential customers for the purpose of selling [TWEAN] services." (A894 at ¶ 21; A863; A870-A873; A330; A335-A336; A508.) The primary service units ("PSU") that TSRs sell are cable, internet, and telephone. (A892 at ¶ 13; A441-A442; A304-A305; A520; A503.)

### 1.     Plaintiffs Were Chosen for the TSR Position Because of Their Sales Experience

On December 3, 2010, Plaintiff Jeffrey Sydney ("Sydney") became the first TSR in Syracuse. (A893 at ¶¶ 17-18.) Plaintiff Steven Capousis ("Capousis") was brought into the position on December 20, 2010. (A894 at ¶ 19.) The job postings for the position advertised it as a sales position within the Direct Sales Department. (A893-A894 at ¶¶ 16, 20-21; A863-A864; A867-A873; A422; A330; A335-A336;

A508.)  Prior to becoming TSRs, Plaintiffs were both top performing Direct Sales Representatives ("DSR").  (A890-A891 at ¶¶ 4-8.)

### 2. Plaintiffs Obtained Orders Based On Their Sales Efforts

Plaintiffs' own testimony establishes that the orders they received from customers were obtained through their own sales efforts.  When Plaintiffs first started as TSRs, they created their own sales territories.  (A894-A895 at ¶ 22.) Plaintiffs did this by independently compiling lists of the apartment complexes they wanted to target; identifying the person at the complex responsible for referring them to the tenants in the complex to sell TWEAN's services ("Referral Agent"); and cold calling the Referral Agent.  (A895-A897 at ¶¶ 23-30; A306-A310; A312; A335-A336; A357; A366-A367; A424-A426; A510.)   At their first meeting with the Referral Agent, Plaintiffs would introduce themselves and tell the Referral Agent about the services they could provide to the complex's tenants.  (A896 at ¶ 28.) Plaintiffs asked the Referral Agent to have tenants call Plaintiffs to purchase TWEAN's services.  (A896 at ¶ 29.)  After the initial meeting, Plaintiffs tried to meet with the Referral Agent at least once a week or every other week.  (A896-A897 at ¶¶ 30-33; A307; A357; A427-A428; A434.)   During their meetings, Plaintiffs would give the Referral Agent their business cards and personalized pamphlets and brochures containing their names and contact information and information about TWEAN's services. (A897-A898 at ¶¶ 34-36; A336; A361-A362; A408-A414;

A426; A456-A458; A510.) Based on the Referral Agents' relationship with Plaintiffs, the Referral Agent would place Plaintiffs' materials in new tenant welcome kits and other public areas. (A898-A899 at ¶¶ 37, 39-41.) To promote the sales of TWEAN's services at the complexes, Plaintiffs were also expected to hold tenant events and knock on tenant doors to help generate sales. (A899-A900 at ¶¶ 42-46; A312; A354-A355; A395; A432-A433; A466-A467; A472-A473; A491-492; A495; A501-A502; A508-A509; A511-A514; A538.) It was through the above activities that tenants knew to contact Plaintiffs to order TWEAN's services. (A900 at ¶ 47; A306; A320; A395; A425-426; A428-A429; A432-A433; A472-A473; A529.)

### 3. **Plaintiffs Received Ongoing Sales Training**

To enhance Plaintiffs' sales skills, TWEAN provided them with formal and informal sales training. (A906 at ¶ 72.) During training, TWEAN taught Plaintiffs sales techniques and provided them with information about the services they were selling. (A906 at ¶ 73.) The Direct Sales Department also held weekly sales meetings that Plaintiffs attended, during which supervisors and managers discussed sales tips. (A906 at ¶¶ 74-75.) Plaintiffs also concede that TWEAN routinely provided them with sales tips, both verbally and via email. (A906-A907 at ¶¶ 76-77; A360; A363; A400-A401; A407; A416-417; A455; A459-A461; A502; A530-531.)

### 4.     Plaintiffs' Performance Requirements Were Sales-Based

Plaintiffs' performance requirements were based on sales, and this sales focus was reinforced in annual performance reviews and through sales rankings.  (A907-909 at ¶¶ 78-87; A346; A395; A443; A472-A473.)   Indeed, Plaintiffs admit throughout their Appellants' Brief that they had sales quotas they were expected to meet.  (Appellants' Brief (D.E. 42) at 13, 28.)  For example, the "TSR Minimum Performance Requirements" required TSRs to "maintain a minimum of 49 PSU sales in a fiscal month."  (A907 at ¶ 79.)  In their annual TSR performance reviews, Plaintiffs' overall performance ratings were based on whether they achieved that quota.  (A907-908 at ¶ 81; A346; A395; A443; A472-A473.)  Further, Plaintiffs' annual performance reviews contained tips on improving their sales in the upcoming year.  For example, Sydney's review indicated that he "needs to do more events and needs to show his presence more often in his assigned complexes.  Jeff needs to meet more customers by knocking more in his complexes to improve his overall performance."  (A908 at ¶ 82.)  Similarly, Capousis' review stated that he "should take more initiative and not rely on what MDU[3] managers give him but he should go out and get customers on his own.  If Steve would spend a couple evenings a week knocking on door[s] his sale[s] would increase to the next pay level more

---

[3] "MDU" refers to a multiple dwelling unit, such as an apartment complex.

consistently." (A908-909 at ¶ 83.)   In addition to their annual reviews, Plaintiffs also received weekly standings which ranked all of the sales representatives in the Direct Sales Department.  (A909 at ¶ 84.)  At different times, both Sydney and Capousis led the department in the sales rankings.  (A909 at ¶¶ 85-87.)

### 5.   **Plaintiffs' Compensation Was Based Primarily on Sales**

The purpose of the TSR Commission Plan was to provide TSRs "with an incentive for achieving the Company's sales and revenue objectives." (A910 at ¶ 89.)  The four specific objectives of the TSR Commission Plan were to: (1) drive PSU sales; (2) maximize total revenue per customer sold; (3) drive bundle sales[4]; and (4) drive ancillary product growth.  (A901 at ¶ 90.)  Sales were not eligible for commission until the order was processed and installed.  (A911 at ¶¶ 92-94.)  In contrast to the significant commissions Plaintiffs received for making sales, they were not separately compensated for the occasional alleged troubleshooting or repair work they performed to build and maintain their relationships with Referral Agents and customers.  (Appellants' Brief (D.E. 42) at 14, 28-29).

### 6.   **All of Plaintiffs' Duties Were Intended to Increase Their Sales**

Plaintiffs' goal was to make sales, and all of the work they performed was directed towards that goal.  For instance, when Plaintiffs successfully obtained orders for services, they often installed (*i.e.,* delivered) the services they had just

---

[4] A bundle is the sale of multiple PSUs at one time.  (A892 at 14.)

sold even though TWEAN employs installation technicians Plaintiffs could schedule to perform the installation, and has self-installation kits Plaintiffs could have provided to customers. (A902-904 at ¶¶ 52-56; A515-A517; A519-A520; A523-A528; A540; A542; A551-A552; A306; A319; A337; A339-340; A490; A435.) Plaintiffs performed the installations themselves because it helped them consummate sales. (A903 at ¶¶ 57-58.) In fact, Sydney concedes that customers placed orders with him because he could immediately install the services they purchased from him. (A903 at ¶ 58.) Further, with respect to Plaintiffs' installation of services, Plaintiffs installed **only** services that they themselves sold (*i.e.*, unlike installation technicians TWEAN employed to perform installs, Plaintiffs did not install services sold by others). (A902-A903 at ¶¶ 53-55, 57-58; A319; A339-340; A515-A517; A519-A520; A523-A528; A540; A551-A552; A496; A848 at ¶ 14; A855 at ¶ 14.)

## B. Plaintiffs Admit They Spent the Majority of Their Time in the Field

Plaintiffs do not dispute that they spent the majority of their time outside of TWEAN's offices, in the field. (A904-905 at ¶¶ 63-68.) Indeed, Sydney admits he spent less than 10 hours a week in the office despite claiming he worked a total of between 50 and 70 hours per week. (A904 at ¶¶ 61-62.) Capousis confirms that he too spent a substantial portion of his working time in the field. (A905 at ¶¶ 65-68.) During their time outside of TWEAN's office, Plaintiffs worked alone without direct

supervision. (A905 at ¶ 69.) In fact, Sydney admits that no supervisor ever went with him in the field, while Capousis admits there were only one or two occasions when a supervisor went into the field with him. (A905-906 at ¶¶ 70-71.) Thus, while Plaintiffs' assert in their Appellants' Brief that they were "supervised," it is undisputed that there was no direct supervision of Plaintiffs in the performance of their job duties in the field.

## VI. STANDARD OF REVIEW

The Court reviews the District Court's grant of summary judgment de novo. *Pippins v. KPMG, LLP*, 759 F.3d 235, 239 (2d Cir. 2014). Although all inferences must be drawn in favor of the party opposing summary judgment, mere speculation and conjecture by that party "is insufficient to preclude the granting of the motion." *Harlen Assoc. v. Incorp. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Moreover, the Court of Appeals "may affirm summary judgment on any grounds with sufficient support in the record, even if they differ from the ones on which the district court relied." *Hill v. Delaware North Companies Sportservice, Inc.*, 838 F.3d 281, 287 (2d Cir. 2016).

"The exemption question" under the FLSA "is a mixed question of law and fact." "The question of how the [employees] spent their working time ... is a question of fact. The question whether their particular activities excluded them from the

overtime benefits of the FLSA is a question of law...." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2012).

## VII.    ARGUMENT

The District Court correctly found that Plaintiffs' overtime claims fail under both the FLSA and NYLL because those statutes exempt from overtime "any employee employed … in the capacity of outside salesman."  29 U.S.C. § 213(a)(1); 12 NYCRR § 142-2.2 (2014) (NYLL requires employers to pay overtime "in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act of 1938"); *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504(WHP), 2009 WL 4975237, at *5 (S.D.N.Y. 2009) (NYLL "is defined and applied in the same manner as the FLSA and includes an exemption for outside salespersons").

The outside sales exemption exempts from overtime an employee:

(1) Whose primary duty is (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500.  As shown below, the Court properly held that Plaintiffs fell within the outside sales exemption as a matter of law, as: (1) Plaintiffs admit that the District Court's conclusion that their primary duty was sales was based on undisputed facts regarding how Plaintiffs spent their time; (2) the District Court

properly rejected Plaintiffs' wholly unsupported, self-serving characterization of their activities as non-sales related, given that Plaintiffs ultimately admitted all of their activities were intended to increase their sales and commissions; and (3) Plaintiffs admit they spent the majority of their work time outside the office performing these sales-related activities.

## A. Undisputed Facts Compelled the Conclusion That Plaintiffs' Primary Duty Was Sales

The term "primary duty" "means the principal, main, major or most important duty that the employee performs … with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). As shown below, Plaintiffs' own admissions leave no question that their most important duty was sales, and that virtually all of their activities were directed towards increasing their sales. Thus, the District Court did not err when it concluded that Plaintiffs' primary duty was sales.

### 1. Plaintiffs Concede Facts Proving Sales Was Their Primary Duty

As noted above, Plaintiffs expressly admit that the District Court relied only upon "***pertinent facts not in dispute***" in concluding that: (1) Plaintiffs' primary duty was selling or taking orders for services; and (2) they fell within the outside sales exemption. (Appellants' Brief (D.E. 42) at 24 (emphasis added).) Indeed, Plaintiffs admitted all of the following facts in the District Court proceeding (and/or their Appellants' Brief) showing that their most important (and thus primary) duty was obtaining sales orders for TWEAN's products and services:

13

- Plaintiffs' Territory *Sales* Representative position is part of TWEAN's Direct *Sales* Department (A891 at ¶¶ 9-10; A893-894 at 18-19);

- Prior to being selected for the TSR position, both Plaintiffs were top performing Direct *Sales* Representatives (A890-891 at ¶¶ 4-8);

- "The purpose of the TSR position is to take work orders from potential customers . . ." (A894 at ¶ 21; A863 at ¶ 11; A870-A873; A330; A335-A336; A508);

- The job description for the TSR position expressly states that the purpose of the job is "[t]o build relationships with property staff [and] represent the company to potential customers **for the purpose of selling our services**." (A894 at ¶ 21; A863 at ¶ 11; A870-A873; A330; A335-A336; A508 (emphasis added));

- TSRs are "supposed to take work orders from potential customers . . ." at the apartment complexes to which they are assigned (A892 at ¶ 12; A507; A538; A542);

- When Plaintiffs started as TSRs, they created their own sales territories by identifying apartment complexes they wanted to target, including by driving to different areas on their own to identity opportunities (A894-A895 at ¶¶ 22-23, 25);

- Plaintiffs would tell the apartment complex managers about the TWEAN services that were available to the tenants, and would ask the managers to have the tenants call Plaintiffs to purchase those services (A896 at ¶¶ 28-29);

- To facilitate and promote sales, Plaintiffs provided the property managers with their business cards and personalized pamphlets or brochures containing their name and telephone number and identifying Plaintiffs as their "Personal TWC Sales Consultant" (A897-A898 at ¶¶ 34-36; A426; A456-A458; A463; A336; A361-A362; A408-A414; A510);

- Plaintiffs would hold events at apartment complexes to promote themselves and TWEAN's services, and would receive sales orders at those events (A899-A900 at ¶¶ 43-46);

- After receiving Plaintiffs' promotional information, apartment tenants would call Plaintiffs to order TWEAN's services (A900 at ¶ 48);

- Plaintiffs tried to get customers to order as many services as possible (A901 at ¶ 50);

- Plaintiffs created and maintained relationships with property managers at Plaintiffs' chosen apartment complexes so Plaintiffs would be more likely to obtain orders from those complexes (Appellants' Brief (D.E. 42) at 15; A898 at ¶ 38);

- Plaintiffs spent substantial time traveling to, and performing activities at, customer locations, concluding as many as 5-10 sales per day by installing same.  (Appellants' Brief (D.E. 42) at 17, 22, 32.);

- Plaintiffs had a monthly sales quota they were expected to meet (Appellants' Brief (D.E. 42) at 13, 28);

- Plaintiffs were not required to install the services they sold, but could offer to do so, provide customers with a self-installation kit, or schedule a technician to install the services.  (A902 at ¶¶ 53-55; A319; A339-A340; A515-A517; A519-A520; A523-A528; A532; A540; A551-A552; A496);

- TSRs could promote sales by offering to waive the installation fee if the customer allowed the TSR to perform the installation of the services himself, rather than using one of TWEAN's service technicians (Appellants' Brief (D.E. 42) at 20);

- TSRs could promote sales by offering to install the services themselves the same day the customer agreed to purchase the services (A903 at ¶ 58);

- Plaintiffs received ongoing sales training (A906 at ¶¶ 72-73);

- Plaintiffs attended weekly sales meetings (A906-A907 at ¶¶ 74-76; A360; A363; A400-A401; A406-A407; A415-A417; A455; A459-A461; A477-A478; A530-A531);

16

- Plaintiffs had sales-based performance goals and were ranked based on sales (A907 at ¶¶ 78-80; A909 at ¶ 84);

- Plaintiffs were counseled in their performance reviews to "knock on more doors" to increase their sales (A908-A909 at ¶¶ 82-83);

- Plaintiffs received sales awards as TSRs, such as Capousis' recognition in the Winner's Circle for October 2012 for "consistently raising the bar in **sales** productivity and revenue generation for the company!" (A909 at ¶¶ 85-87; A484; A486 (emphasis added)); and

- Plaintiffs received most of their income from sales commissions. No less than 58% of Sydney's compensation during each year of his employment (2010 – 68.36%, 2011 – 70.26%, 2012 – 58.28%) constituted commissions, while Capousis' commission payments constituted from 58% to 76% of his compensation (2011 – 76.31%, 2012 – 68.54%, 2013 – 58.32%). (A912-A915 at ¶¶ 96-110; A294-A296; A555-A558.)

Applying well-settled law to these undisputed facts compels the conclusion that Plaintiffs' primary duty was sales because as described above, all of these activities and job duties were driven by Plaintiffs' sales obligations. *See Christopher v. Smithkline Beecham Corp.*, 132 S. Ct. 2156, 2163 (2012) (employees hired for sales experience and trained to close sales bore indicia of salesmen); *Gold v. New York Life Ins. Co.*, 730 F. 3d 137, 145 (2d Cir. 2013) (primary duty was sales where

plaintiff hired and trained to sell); *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2009) ("employee is more likely to be considered engaged in sales if the job was advertised as a sales position and the employee was recruited based on sales experience and abilities"); *Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971, 975 (W.D. Tenn. 2003) (DSRs who received sales training in products and techniques are outside salespeople); *Nielsen*, 302 F. Sup. 2d at 757 (handouts for overcoming objections and territory management "reflect [employer's] efforts to train its field representatives in the art of sales"); *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102, 1106 (M.D.N.C. 1972) (hiring and denomination as salespeople, product training, and monthly sales meetings indicia of sales focus).

Plaintiffs fail to address the above undisputed facts and law, and instead argue that the District Court overlooked other facts purportedly showing that Plaintiffs' primary duty was maintaining relationships with Referral Agents and installing TWEAN's services. The District Court did not overlook any such facts; rather, it correctly observed that those activities were incidental to, and in furtherance of, Plaintiffs' sales. Indeed, Plaintiffs failed to cite any authority supporting their argument that time they spent building relationships with Referral Agents was not sales work. This is not surprising as the law is to the contrary. *See, e.g., Christopher*, 132 S. Ct. at 2163 (pharmaceutical reps marketing to doctors rather than retail pharmacies are outside salespersons); *Dixon v. Prospect Mortg., LLC*, 11 F. Supp.

3d 605, 610-11 (E.D. Va. 2014) (activities directed at referral sources are outside sales activities); *Hodgson,* 346 F. Supp. at 1105 (salesmen who persuaded stores to display donuts for purchase by customers are outside salespersons). In fact, as shown above, ***Appellants' Brief admits that the purpose of their relationship-building with Referral Agents was to generate sales***. (Appellants' Brief (D.E. 42) at 15; *see also* A898 at ¶ 38). Thus, Plaintiffs' argument that they spent much of their time building relationships with Referral Agents fully supports the conclusion that they were outside salespersons.

Likewise, Plaintiffs' installations were obviously incidental to their sales, as they admit: (1) performing installations helped them make sales; and (2) unlike service technicians to whom they compare themselves, Plaintiffs did not install (*i.e.*, deliver) products they did not sell and sold products they did not install. (A902-A903 at ¶¶ 53-55, 57-58; A319; A339-340; A515-A517; A519-A520; A523-A528; A540; A551-A552; A496; A848 at ¶ 14; A855 at ¶ 14.) Thus, as a matter of law, Plaintiffs' installation work and relationship-building activities were part and parcel of their sales efforts, and thus constitute outside sales work. 29 C.F.R. § 541.500(b).[5]

---

[5] Because installations were incidental to sales, Plaintiffs' arguments regarding installation training are immaterial, as is their *unsupported speculation* that they replaced service techs. Further, Plaintiffs' ongoing sales training and weekly sales meetings far exceeded their one week of install training. (A906-907 at ¶¶ 72-76; A360; A363; A400-A401; A406-A407; A415-A417; A455; A459-A461; A477-A478; A530-A531.)

**2.** **Plaintiffs' Unpaid Commissions Claim and Arguments in the District Court Constitute an Admission that Sales Was Their Primary Duty**

In addition to the above undisputed facts unquestionably establishing that their primary duty was sales, Plaintiffs' Complaint and arguments in this action constitute a judicial admission to that effect. Specifically, Plaintiffs asserted a claim for unpaid commissions under Section 191(1)(c) of the NYLL, which only applies to "employee[s] *whose principal activity is the selling of any goods … [or] services*." N.Y. Lab. Law § 190(6). Plaintiffs maintained and actively argued this claim through summary judgment. Plaintiffs' affirmative pursuit of a claim that applies **only** to "employee[s] whose principal activity is the selling of any goods … [or] services" constitutes an admission that "selling goods or services" was in fact their principal activity. *See XL Specialty Ins. Co. v. Otto Naumann, Ltd.,* No. 12–CV–8224, 2015 WL 1499208, at *2 (S.D.N.Y. Mar.31, 2015) (disregarding contrary factual allegation in defendant's answer).

For all of the above reasons, the District Court did not err in finding that Plaintiffs' primary duty was sales and, thus, that the first element of the outside sales exemption test was satisfied as a matter of law.

**B.** **Plaintiffs Were Customarily and Regularly Engaged Away From TWEAN's Place of Business in Performing Their Primary Duty**

There is also no question that the second element of the outside sales exemption is satisfied here, as Plaintiffs admit they were "customarily and regularly

engaged away from" TWEAN's offices in performing the above sales-related activities. In fact, Sydney admits he spent 85 to 90 percent of his time in the field, while Capousis admits he too spent a substantial portion of his working time in the field performing these activities. (A904-A905 at ¶¶ 61-68.) Further, Plaintiffs admit in their Appellants' Brief that they spent substantial time traveling to, and performing activities at, customer locations, concluding as many as 5-10 sales per day by installing same. (Appellants' Brief (D.E. 42) at 17, 22, 32.) These undisputed facts satisfy the second element of the outside salesperson exemption. *See e.g.,* *Gold*, 730 F. 3d at 145 (employee "regularly engaged away from his employer's place of business" meeting people was outside salesperson); *Dixon*, 11 F. Supp. 3d at 610 ("the pertinent inquiry is whether the employee performs tasks critical to the sales process away from the office on a greater than occasional basis"); *Taylor v. Waddell & Reed, Inc.*, No. 09cv2909, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) ("sales related activity outside the office 'one or two hours a day, one or two times a week' satisfied the test for the [outside sales] exemption"); *Lint v. Northwestern Mut. Life Ins. Co.*, No. 09CV1373, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010) (spending 10%-20% of time outside office engaged in sales activity satisfies exemption); *Chenensky*, 2009 WL 4975237, at *6 (employee who spent majority of time outside office was outside salesperson); *Fields*, 261 F. Supp. 2d at 975 (DSRs who "spent the majority of their time working away from the Time Warner office"

21

were outside salespeople).

Accordingly, the District Court correctly applied the law to the undisputed facts in holding that Plaintiffs fell within the outside sales exemption.

## C. Plaintiffs Satisfy All the Hallmark Indicia of Outside Salespersons

In addition to satisfying the plain language of the exemption, the undisputed facts show that Plaintiffs easily satisfy all of the "hallmark activities" courts consider in determining whether the outside salesperson exemption applies. Those "hallmark activities" are:

> (1) whether the employee generates commissions for himself through his work, (2) the level of supervision of the employee, (3) the amount of work done away from the employer's place of business; (4) whether the employee independently solicits new business, and (5) the extent to which the employee's work is unsuitable to an hourly wage.

*Chenensky,* 2009 WL 4975237 at *5; *Gold v. New York Life Ins.*, 09 Civ. 3210(WHP), 2011 WL 2421281, at *3 (S.D.N.Y. May 19, 2011); *see also* 29 C.F.R. § 541.700(a). As shown below, all of these factors show that the outside sales exemption applies to Plaintiffs.

### 1. Plaintiffs Generated Commissions for Themselves on Their Sales

There is no dispute that Plaintiffs generated commissions for themselves through their sales work. (A912-A915 at ¶¶ 96-110.) Plaintiffs received these commissions based primarily on the number of PSU and bundle sales they made, as well as the revenue generated from those sales. In fact, the purpose of the TSR

Commission Plan was to provide TSRs "an incentive for achieving the Company's sales and revenue objectives." (A910 at ¶ 89.) Accordingly, this factor supports the application of the outside salesperson exemption. *See Chenensky*, 2009 WL 4975237 at *6 (commission-based compensation undermined plaintiff's denial of salesperson status); *Nielsen*, 302 F. Supp. 2d at 757 (compensation reflecting employee's ability to close sales supported application of outside sales exemption); *Fields*, 261 F. Supp. 2d at 975 (DSRs compensated by commissions were outside salespeople).

## 2. Plaintiffs Were Subject to Little or No Supervision

Plaintiffs' admissions establish that they worked unsupervised in the field. That is, Sydney testified that no supervisor ever accompanied him in the field, while Capousis stated there were only one or two instances when a supervisor went into the field with him. (A905-A906 at ¶¶ 69-71.) Thus, this factor also weighs in favor of the exemption. *See Chenensky*, 2009 WL 4975237, at *6 (employee free from manager's day-to-day supervision was outside salesperson); *Fields*, 261 F. Supp. 2d at 975 (DSRs with limited supervision were outside salespeople).

Plaintiffs' argument that they were subject to "undue" supervision because they had to report to work; attend sales meetings; keep their supervisors apprised of their total sales and whereabouts; and would be contacted by their supervisor if they missed a scheduled installation does not change this result. Indeed, that argument

is devoid of legal support and is akin to asserting that only independent contractors can be outside salespersons. Such cursory supervision is simply irrelevant in light of Plaintiffs' admissions establishing that they worked alone in the field **without** supervisors present and that they were responsible for scheduling their own appointments. *See Chenensky*, 2009 WL 4975237, at *6 (employee free from manager's day-to-day supervision was outside salesperson); *Fields*, 261 F. Supp. 2d at 975 (DSRs with limited supervision were outside salespeople). (A903 at ¶ 59; A906 at ¶¶ 69-71.)

### 3. Plaintiffs Performed Substantial Work Away From TWEAN's Place of Business

This factor is easily established by Plaintiffs' own admissions, as shown in Section VII. B., above.

### 4. Plaintiffs Independently Solicited New Business

It is undisputed that Plaintiffs independently solicited business. Plaintiffs admit that they created their own sales territories and that the orders they received from tenants were based on their own sales efforts with Referral Agents, as well as the promotions and events they organized. (A894 at ¶ 22; A896 at ¶¶ 29-30; A899-A900 at ¶¶ 42-47; A306; A320; A357; A395; A425-A426; A428-A429; A432-A433; A472-A473; A508-A509; A511-A514; A529; A538; A491-A492; A495; A501-A502.)

In another legally unsupported (and unsupportable) argument, Plaintiffs argue

24

they were not outside salespersons because they purportedly directed their sales efforts towards property managers, who would then refer potential customers to Plaintiffs so they could close the sales opportunity. (Appellants' Brief (D.E. 42) at 32. That argument is "unsupported by any authority and has been rejected by other districts." *Dixon*, 11 F. Supp. 3d at 610-11 (outside sales exemption does not "exclude from consideration an employee's outside activities directed at referral sources" or "limit the application of the outside sales exemption to those employees that consummate sales at a client's home or place of business"); *Taylor*, 2012 WL 10669 at *4 ("Plaintiffs misconstrue the FLSA definition of sales … it does not matter that the actual moment of sale occurred inside the office").

### 5. **Plaintiffs' Work Was Unsuitable for an Hourly Wage**

Other than attending required sales meetings, Plaintiffs had free rein to schedule their work day, were not required to stay on any particular schedule, and would often handle calls at random times -- all factors which made their jobs unsuitable for hourly pay as it was "difficult to standardize to any timeframe." (A900-A901 at ¶¶ 49, 60; A432; A462; A306; A518; A521-A522); *See Christopher*, 132 S. Ct. at 2173; *Chenensky*, 2009 WL 4975237, at *6 (employee with "significant discretion over the content and structure of his worklife" was outside salesperson); *Nielsen*, 302 F. Supp. 2d at 758 (plaintiffs who "for the most part" planned own daily schedule were outside salespeople).

25

In short, the undisputed facts show that Plaintiffs' work as TSRs satisfied not only the plain language of the DOL's outside sales regulations, but also every characteristic of the prototypical "outside salesperson" identified by courts that have considered this exemption. Accordingly, the District Court's grant of summary judgment was entirely proper, and should be affirmed.

## VIII.    CONCLUSION

Based on the foregoing, Appellee respectfully requests that the Court affirm the District Court's decision.

Dated: November 6, 2017                    KABAT CHAPMAN & OZMER LLP

By:    /s/  J. Scott Carr
        J. Scott Carr

KABAT CHAPMAN & OZMER LLP
171 17st Street NW
Suite 1550
Atlanta, Georgia 30363

*Attorneys for Appellee*
*Time Warner Entertainment-*
*Advance/Newhouse Partnership*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

I hereby certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the attached brief is proportionally spaced, has a typeface (Times New Roman) of 14 points, and contains 5,677 words (excluding as permitted by Fed. R. App. P. 32(f)), as counted by the Microsoft Word processing system used to produce this brief.

Dated: November 6, 2017        KABAT CHAPMAN & OZMER LLP

By:   /s/ J. Scott Carr
        J. Scott Carr

171 17st Street NW
Suite 1550
Atlanta, Georgia 30363

*Attorneys for Appellee*
*Time Warner Entertainment-*
*Advance/Newhouse Partnership*

## <u>CERTIFICATE OF SERVICE</u>

I, J. Scott Carr, do certify that, on November 6, 2017, I caused a true and correct copy of Appellee's Answering Brief to be served by and through the ECF system, on the following:

>Matthew J. Blit
>LEVINE & BLIT, PLLC
>350 5th Avenue, Suite 4020
>New York, NY 10118

>Attorneys for Appellants

This 6th day of November, 2017.

>KABAT CHAPMAN & OZMER LLP

>By:   s/  J. Scott Carr
>J. Scott Carr

>171 17st Street NW
>Suite 1550
>Atlanta, Georgia 30363

>*Attorneys for Appellee*
>*Time Warner Entertainment-*
>*Advance/Newhouse Partnership*